Good morning, Your Honor. This is James Crawford on behalf of Mr. Bonilla. Your Honor, briefly, just so the Court's aware, there is a new case that I have just found yesterday while I was getting ready for oral argument. I shared it with counsel. I don't know if the Court's aware. It's a Ninth Circuit decision from 2008. It's Persino v. Scrippner. That's not very new. Well, that's the first time I've had a chance to look at it since I was getting ready for argument. We call it an old case. The Court is aware of Persino, then. Of what? Persino v. Scrippner. Oh, yes, yes, yes. Okay. I just wanted to make sure the Court's aware of that decision because it wasn't cited in either of our briefs. Yeah, we should have sent you a notice to be prepared to discuss that. Your Honor, the Court is aware, as obviously it is, of the Persino decision. In that case, it was out of Orange County. There was those two gang members on Christmas Day or Christmas Eve that committed those four robberies so that they could purchase Christmas presents. And a panel of the Ninth Circuit decided that this series of robberies were not committed for the benefit of, at the direction of, or in furtherance of the criminal street gang. In this particular case, I believe the facts are much more analogous to the Persino decision because in this particular case, as the Court's well aware, the defendant and his two girls that he was with that evening at the donut shop were simply out having a night. There's no evidence that they planned on committing a crime. There's no evidence that they ever bragged about the crimes to other gang members. They wanted to get the money so that he could go to the hotel room and shack up with one of the girls. How is that for the benefit of, or the direction? I don't know, but he said there's no evidence of what they wanted to do. There was evidence of why they robbed somebody so he could get a hotel room. I understand, Your Honor. I mean, absent the evidence, Jackson v. Virginia requires proof of each element of the offense beyond a reasonable doubt. And based on Garcia v. Carey and Persino v. Scribner, the people, the prosecution, had the burden of proving beyond a reasonable doubt that the defendant had the specific intent to promote gang activity other than the conviction offense. And in this particular case, the prosecution put on one expert, Detective Ortega, and Detective Ortega certainly was in no position to testify that the defendant harbored such a specific intent. The statute says they had to show specific intent to promote further or assist in any criminal conduct by gang members. That's what the statute says, isn't it? Yes, Your Honor. Why wasn't this assisting criminal conduct by gang members since the two women who were participating in the robbery were gang members? Yes, Your Honor, but there is no evidence that the defendant had the specific intent to, to what? To further the gang, to assist the gang? The statute doesn't say to further the gang. It says to promote further or assist in criminal conduct by gang members. As I take it, what that means is he has to be doing something that's going to help and further criminal conduct committed by gang members. And why isn't that exactly what happened here? Well, Your Honor, there were gang members. Yes. The two ladies were gang members. And they were engaged in criminal conduct, armed robbery. Well, Your Honor, if the court goes back to its decision in Garcia v. Carey, the Ninth Circuit in itself held that not only was there the underlying commitment offense, but there has to be the specific intent to promote gang activity other than the conviction itself. And that is based on Garcia v. Carey and Burcino v. Scrippner, which are both Ninth Circuit decisions interpreting Penal Code Section 186.22, Subdivision B of the California Penal Code. And as the court noted in Burcino v. Scrippner in 2009, the Garcias interpretation of Penal Code Section 186.22 is still controlling in this circuit because there has been no California Supreme Court decision disagreeing with the decision in Garcia v. Carey. There's been a couple of several. Okay. The case in 2009, Burcino, is the one that is most similar. And was Burcino in that case acting in conjunction with any gang members? He was acting in concert with another gang member. committed a series of four robberies between Christmas Eve and, I think, Christmas Day, right between those two days. And the Ninth Circuit concluded that although there was another gang member present during the commission of those crimes, the four robberies were not committed for the benefit of, at the direction of, or in furtherance of their criminal street gang because the evidence established the purpose of these four robberies was to gather money for Christmas shopping. And that's what the Ninth Circuit concluded. And that decision was not rendered under the for-the-benefit-of clause. Is that correct? Well, that decision determined that it was not. The statute seems to have two requirements. One is the for-the-benefit clause, and then there's the specific intent clause. And apparently, before you can impose the gang additional penalty, you have to satisfy both of those clauses. Yes, Your Honor. And I take it you're telling us that the Ninth Circuit held in that case that despite what seems to be the statutory language, they have interpreted the specific intent clause as adopting the standard of the benefit clause.  Well, that's a different question. I mean, if you look at Garcia and we've... Asking about Busino, I think, is that the — in order to satisfy the intent clause, I think Judge Friedman asked you does it satisfy the intent if you're acting with another gang member? Does Busino deal with that question specifically? Yes, Your Honor. Busino — let me try to see if I can find the exact... In Busino, they actually said it doesn't matter if there's ten other gang members present. It was still — that's one factor that might be taken into consideration, but that in and of itself is not a determinative factor of whether or not the gang was committed for the benefit. But did the case specifically hold that you do not satisfy the intent element merely by showing that you were doing something together with another gang member? That's the real point. No, Your Honor. Simply because there's another gang member present based upon the decision in Busino is not sufficient in order to establish beyond a reasonable doubt that the gang crime, or whether there's a gang member present or a non-gang member present, whether there's multiple persons or a single person. I would just love to find the court the exact language that came out of Busino, but... Well, you can look on — after you sit down, try 1078 and 1079. What? Merely being a gang member. We're going to sit down for rebuttal if you haven't found it. Okay. Your Honors. Thank you. I didn't mean to have to, but that's okay. Oh, okay. I found it here, though, Your Honor. Merely being a gang member or committing a crime in association with another gang member is not enough to trigger the sentencing enhancement. And that's based on the Ninth Circuit decision in Busino, and that's at page 1080. And also 1079 says the same thing. Okay. If the Court has any other questions, I'd be prepared to answer them. Your Honor, you've saved your last two minutes. Thank you, Your Honor. I'm sorry. Were you familiar with Busino? I have read the case, Your Honor, so I will discuss it, yes. My name is David Glassman. May it please the Court. I represent the appellee. I'd like to, before I discuss Busino and Garcia, talk briefly about the facts of this case because this is a sufficiency of the evidence case, as the Court is aware. And the facts of this case are that when the victim in this matter meets the young woman at a donut shop and after a conversation it's decided that they're going to retire to his home, her companions are also going to accompany them. But unbeknownst to him, that is the victim. The three of them are gang members, and it is decided independently by the members of the gang that they will commit a robbery when they arrive at his residence. And we know that the gang member who accompanies him knows that that is the plan, and we know that the other two, including the commissioner, know that that is the plan because they discussed the plan before they got there. And they all have in common, from this record, only one fact, and that is their common gang membership. And sure enough, he is promptly robbed and tied, and his car is stolen. And when they are apprehended the following day, they are in his car. And the question in this case is whether or not it is unconstitutional on the facts of this case to decide that the enhancement alleged in this case applies. And I submit, certainly in light of Jackson v. Virginia, and even outside of the context of the ADPA, this is an overwhelming case in which not only is that a reasonable inference, but it is the only reasonable inference. And to the point that there was a competing motivation in this case, and by the way, I haven't even addressed yet the disputed expert testimony. I'm talking about the... How do you distinguish it from Buccino? Well, in several ways. First of all, if we refer to either the language of these cases and statutes or the intent, we know that within the ADPA, within the Supreme Court's statements about the ADPA, we are to look at Supreme Court authority in resolving this case. So the first question is whether or not... Buccino is a case we had one year ago, which one month ago was cited as a case which exemplifies the finding of insufficient evidence. And there's no point going... We're bound by our cases. And it's an unbanked case that gave this as an example of a case where there's insufficient evidence. Then if we look... First of all, I think that it is still appropriate to question the methodology of decided cases to another panel. And there is an indication in Buccino... Well, I don't understand you saying the methodology of decided cases. As Judge Roney just pointed out, if that case decides the issue, there's nothing we can do. We can't say, well, we're not going to follow that case because we think on our own analysis they didn't follow, have the right approach or something. We can't do that. Judge Friedman, all I'm saying, and I will proceed to address the case momentarily, all I'm saying is that where there is a rule in habeas corpus litigation that state courts determine state law, and so therefore cases decided post-Garcia say respectfully that the federal court did not correctly interpret state law as we interpret it, the court in Buccino says... ...interpreting California law. I would agree. No, I would agree with your statement. My point is that the court, very specifically, my point is that the court in Buccino says unless the California Supreme Court has reached a decision, we're not bound by intermediate state appellate courts with which we disagree. Okay, so what's the relevancy of that? The relevancy of that is that post-Garcia, state courts... Where's Buccino? The relevancy of that is that Buccino ultimately interprets the statute vis-à-vis the facts of that case. And there's been indication on the facts of that case the court considered the evidentiary determination on the facts of that case only to be unreasonable, which means given that this is a sufficiency of the evidence case... Let's get to that case, and I'd like to put to you the same question I put to your opponent. Did that case hold that the intent element of the statute is satisfied by the prior part of the statute? In other words, that it's not enough to show, to satisfy the intent provision of the statute, to show that a gang member assisted other gang members in committing an offense. Judge Friedman, counsel indicated to me within the last half hour his intent to cite the case, so I have read it quickly. I would have to have it in front of me, which I do not, to fully answer your question. Ultimately, all Buccino or any other case can do is interpret the statute. I do have the statute, and the language of the statute is clear, and I think you indicated it in your remarks earlier. Well, what we should have done was to, because your briefs probably were done before Buccino, or I don't know how, otherwise I assume we would have discussed it. But we should have notified you to be prepared to discuss Buccino. If you want, you tell us at the end of the argument, if you'd like an opportunity to send us a short supplemental memorandum on Buccino, we will give you that opportunity. And I certainly won't decline that, Judge Reinhart, but I'm hoping in the next three and a half minutes to obviate the need for that, because the issue in the case is ultimately whether or not under the Jackson standard this statute was met. And I would submit that where the evidence, the uncontradicted evidence, is exactly as I described it, and there is no dispute about that, and where, as the Petitioner indicates in his brief, there was no contrary evidence presented. The Petitioner chose to rely on the state of the evidence. There was no evidence of an alternative motivation for this crime. That certainly wasn't the Petitioner's testimony, because he didn't testify. So the fact is that the only reasonable inference is that the crime was ---- But the problem, as I see it, is whether there's enough, whether it's enough to satisfy the intent clause to show that it was done for the benefit of the gang. Well ---- That's the question, isn't it, in this case? The question is whether or not, as Jackson frames it, in any case in which sufficiency of the evidence is at issue, whether any rational trier of fact could determine that that standard had been met here. And where you have three professed gang members working in concert with each other to commit a robbery, a robbery that is obviously planned independently, minutes after meeting the victim, it is a reasonable inference that the statute is satisfied. And not only is any other inference ---- That doesn't answer my question, whether it's a ---- you said it's a ---- whether it's the statute has been satisfied. That doesn't answer my question whether the intent clause requires also that it be for the benefit of the gang. Well, insofar as that is your question, I would submit that, first of all, that is an inference that one can draw from the evidence. The jury is to explain the standard. The jury is to decide whether the crime is committed for the benefit of the gang. Do the jury have to make the determinations under the Gang Enhancement Statute? Yes. These are factual findings made by the jury as instructed. And if there were any doubt, there is a question put to the expert. And the question is, in your opinion, was the particular crime that was committed, the home invasion robbery and then the possession of a firearm by a felon, were those committed for the benefit of or at the direction of or in association with the gang? That's the first point. The second point is specific intent. And the expert was not allowed to answer that question, specific intent, because his opinion on specific intent is improper. The only ‑‑ I would submit, again, on this record, I don't know about some other case that might have played out some other way, but on this record, I cannot imagine how one could rationally divine between the evidence that was presented and the opinions that were rendered and that additional question. No one was drawing a distinction. Let me ask you a slightly different question. Was the jury instructed that it had to answer both prongs of the statute, or was it given a much broader instruction? I would have to review the record in order to answer that question. Well, if you don't ‑‑ So I don't know. I don't know. But the ‑‑ since my time is up, the immediate answer to the question is, that has not been claimed in this case as a basis for relief. No misunderstanding of the jury, no failure to instruct the jury. I understand that. I'm just curious. I'm just trying to figure out, because you are arguing that the record requires this conclusion, and I'm just wondering what the jury was told it had to decide. My time is up. I'm arguing that the record allows this conclusion, that it is eminently reasonable, and that it is far more than Jackson v. Virginia requires. Thank you. All right. Do you want to submit us a ‑‑ If you'd like to read it, we'd be happy to submit it. I wouldn't like to read it, but if you'd like to submit it, I will read it. You might be surprised. What? You haven't read it yet. You might be surprised. Well, I've got more enjoyable reading waiting for me. Well, I know you won't prejudge the case. I didn't present it. I read Viseno. Very good. Thank you. All right. We'll give you a week enough. All right. Ten pages. What? That's probably too many. Okay. You want seven pages? I'm sure ten will be adequate. We'll use discretion from there. All right. What about a response? I'll take it. Okay. To the supplemental brief, are we going to give them a chance? Yes. So will the AG be filing their brief, and then I'll file a response to that? Yes. Will that be acceptable? Yes. Since we're the last case, I would suggest perhaps a supplemental or simultaneous briefing rather might be appropriate. Well, normally, he's the appellant. You're the appellant, right? Yes, sir. Well, if you want to go by the strict standard, he would go first. You would go second. He would have an opportunity to reply. So if that's what you would like, we'll give you five days, and then you'll have three days to reply, and you'll have two days after that. Yours will be seven pages. Yours will be five, and then you'll have three. Now, if I can only remember that. Okay. All right. Your Honor, if we look at the Burcino decision, it's just, you know, there's no indication. If we look at the facts of that case in comparison to the facts of this case, there was never any mention of the defendant or his two cohorts of Linux 13. There was never any mention that they were in Linux 13 territory, the victim. It was an unfortunate event. I mean, I'm not going to undermine the nature of the crime. The crime was a serious crime, and it is something that absolutely, he needs to be punished for the crime, but he needs to be punished for what he did, not for something that people could not prove. Well, he is being punished for the crime. The question is whether he gets an additional gang enhancement. Correct, Your Honor, and there was no evidence, much less substantial evidence, to support the finding that the defendant harbored the specific intent to promote, further, or direct a criminal street gang. I don't think you're going to add anything to this, other than what you're going to say in your comments on Burcino, which, okay. Yeah. I did get a little lost on where we were, who's filing what first. You're filing first. Ten days? No, seven days. Okay. Did I ask for ten? No. Is there a reason? One case. Yes, I know, but just my caseload. Could I have ten days? All right. If you say pretty, please. Pretty, please, Your Honor. Thank you. Five days to respond, and then three days. I think I had a totally different schedule before. Ten, five, and three. Seven pages. Now, next time we'll say something totally different again. Seven pages, five pages, three pages. Seven pages, three pages. Okay. All right. Case just argued is submitted. Is that really the last case? Is the court going to delay submission until the filing of the supplemental briefs? Will the court delay the submission until the filing of the supplemental briefs? Yes. Thank you, counsel. Okay. Final case of the morning, United States v. Kelly Palmer.
judges: Friedman, Nelson D. W., Reinhardt